DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant, Dennis Collier, appeals his conviction and sentence in the Lorain County Court of Common Pleas for assault on a corrections officer. We affirm.
 {¶ 2} Corrections officer Marvin Barber alleged that during an altercation in the Grafton Correctional Institution, Defendant swung at him with his elbow and bit his hand. Defendant was charged with assault in violation of R.C. 2903.13(A), a felony of the fifth degree pursuant to R.C. 2903.13(C)(2)(a). He pled not guilty and, following a trial to the bench, was convicted and sentenced to *Page 2 
a one-year prison term to be served consecutively with prison terms imposed upon him in prior cases. Defendant timely appealed, raising two assignments of error.
 ASSIGNMENT OF ERROR I "The conviction for assault is not supported by sufficient evidence and is against the manifest weight of the evidence."
 {¶ 3} In his first assignment of error, Defendant argues that his conviction is based on insufficient evidence and is against the manifest weight of the evidence. In State v. Wilson, 113 Ohio St.3d 382,2007-Ohio-2202, the Supreme Court of Ohio reiterated that the standard of review for a manifest weight challenge in a criminal case is that set forth in State v. Thompkins (1997), 78 Ohio St.3d 380. Wilson at ¶ 25. In criminal cases, the distinction between manifest weight and sufficiency "differ[s] both qualitatively and quantitatively," while the civil standard, which affords more deference to the trial court, "tends to merge the concepts of weight and sufficiency." Id. at ¶ 25-26.
 {¶ 4} In light of Wilson and Thompkins, this court must review a manifest weight challenge to a conviction that results from trial to the bench according to the same standard of review applicable to all criminal cases. See, e.g., State v. Nelson, 9th Dist. No. 07CA0020,2007-Ohio-6212, at ¶ 5-8. Consequently, we do not review the record to determine whether "the trial court could reasonably conclude from substantial evidence that the State proved the offense beyond a reasonable doubt," a standard which tends to merge the concepts of sufficiency *Page 3 
and manifest weight. See, e.g., State v. Duncan (Sept. 12, 2001), 9th Dist. No. 3117-M, at *8.
 {¶ 5} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence:
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. Because sufficient evidence is required to take a case to the jury, the conclusion that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 6} Defendant was convicted of assault against a corrections officer in violation of R.C. 2903.13, which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." When the *Page 4 
victim of an assault is employed by the Ohio Department of Rehabilitation and Corrections, assault is a felony of the fifth degree. R.C. 2903.13(C)(2)(a). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 7} Corrections Officer Dustin Woods, who worked with Corrections Officer Barber on the evening of the incident, testified that he went to Defendant's cell in response to an alleged gambling operation. He recalled that when Defendant refused to produce a slip of paper in his possession, he took Defendant to Barber's desk. Woods testified that Defendant produced the document, but then broke free as Woods tried to handcuff him; retrieved the document from Barber's desk; and swung at Barber. A scuffle ensued in which Barber "tackled" Defendant. When Defendant put the piece of paper in his mouth, Barber put his hand over Defendant's mouth. Shortly thereafter, Barber and Woods were able to finish cuffing Defendant. Woods saw Barber's hand later and noted that there appeared to be bite marks that were not "fully broken through."
 {¶ 8} Woods confirmed that he wrote two reports after the incident, but that he only mentioned the bite in one. He explained that his conduct report was limited to the prisoner misconduct that had led him to bring Defendant to the office: the gambling allegation. He stated that he assumed Barber would have *Page 5 
described the bite in a conduct report of his own. Woods did mention the bite in his incident report. He admitted that he did not see Defendant bite Barber because Defendant's mouth and Barber's hand were facing the ground.
 {¶ 9} Corrections Officer Barber testified similarly. He recalled Defendant broke away from Woods and "came at" him, throwing his elbow toward Barber's face. Barber "took him down" and reached around his head when Defendant placed the slip of paper in his mouth. Barber stated, "My hand was between his arm and his mouth, and I felt a pain." Barber described the pain as jabbing, sharp, and throbbing. Upon closer examination, he noted teeth marks that were not "fully penetrated." Although he was not bleeding, he went to the jail's medical staff with concerns about the injury immediately. After driving home from his shift, he also contacted his personal physician because he was concerned about disease. He sought treatment again when his hand showed signs of swelling after several days.
 {¶ 10} Barber testified that his Lieutenant took photographs of his hand after the incident, but agreed that they were of poor quality. He admitted that it was not possible to see in the pictures what he saw on his hand at the time, but testified that he was able to see indentations on his hand for over three weeks after the incident. Barber also testified that he had been eligible for injury leave after the incident, but that he did not take advantage of it because he was able to perform his job duties. *Page 6 
 {¶ 11} Corrections Officer Jason Merritt testified that he processed Defendant when Officer Woods brought him to the segregation unit on the night in question. Merritt testified that he asked Defendant about the incident:
 "Q: Okay. And did [Defendant] make any * * * did he make any voluntary statements to you?
 "A: Yes. I asked him, just out of my own curiosity, what he was thinking when he bit Officer Barber over such a petty thing. He would have only done, like, seven days — seven to 14 days in segregation, so I was just kind of curious why he would bite him over betting slips. And he just kind of looked at me, smirked, and said, `I guess I'm the modern-day Jeffrey Dahmer.'"
Defendant also provided a written statement to Merritt, in which he stated, "Not much to say, paper was swallowed. I grab [sic] it off the desk. Officer was pissed. I came to the Hole. No harm done to me, no injury. But no paper for evidence."
 {¶ 12} Defendant denied each detail of the officers' testimony. According to his version of events, there was no altercation between him and Barber, and the officers stood idly by as he chewed the evidence:
 "They stood there. The guard at the desk never got up. The one behind me let go of my wrist. I knelt down on the ground, laid down, turned my head to the floor, put the papers in my mouth and I chewed them. That's exactly what happened. They stood there watching me. When I got done, one of the guards said, `Cuff up.' I said, `I'm done.' I put both my hands behind my back, I stood up, and they cuffed me and they took me to the segregation, to the hole. * * * [T]hey didn't try to do anything to me. They just looked at me."
According to Defendant, the officers' testimony was part of a scheme motivated by the prospect of six months of paid injury leave. *Page 7 
 {¶ 13} Defendant maintains that his conviction for assault is against the manifest weight of the evidence because there was no physical evidence of a bite to Barber's hand; the injury could have resulted from accidental conduct; and the testimony in support of the State's case was unreliable.
 {¶ 14} Physical harm is "any injury, illness, or other physiological impairment, regardless of its gravity or duration[.]" R.C.2901.01(A)(3). An assault may occur even when there is no outward or physical manifestation of pain or injury. See State v. Lohr, 9th Dist. No. 03CA008265, 2004-Ohio-1609, at ¶ 6 (applying the definition of physical harm set forth in R.C. 2903.13(A)(3) to charges of patient abuse in violation of R.C. 2903.34). In that situation, "`[w]hen there is no tangible, physical injury such as a bruise or cut, it becomes the province of the [trier of fact] to determine whether, under the circumstances, the victim was physically injured, after reviewing all of the evidence surrounding the event.'" Id., quoting State v. Perkins
(Mar. 27, 1998), 11th Dist. No. 96-P-0221, at *3.
 {¶ 15} Defendant's argument is one of credibility. The trial court, presented with opposing versions of the events, chose to believe the State's version instead of Defendant's, as it was free to do. SeeState v. Griffin, 9th Dist. No. 23459, 2007-Ohio-1944, at ¶ 9. This court may reverse a conviction and order a new trial only in the exceptional case where the evidence weighs heavily in favor of the defendant. Otten, 33 Ohio App.3d at 340. This is not such a case. *Page 8 
Accordingly, Defendant's argument that his convictions were against the manifest weight of the evidence and supported by insufficient evidence are without merit. Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "The trial court erred when it sentenced [Defendant] to the maximum term of one year because the sentence is contrary to law."
 {¶ 16} In his second assignment of error, Defendant maintains that his one-year prison term is contrary to law because the trial court did not consider the principles of felony sentencing set forth in R.C. 2929.11
or the seriousness and recidivism factors set forth in R.C. 2929.12. We disagree.[1]
 {¶ 17} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Supreme Court of Ohio concluded that "trial courts have full discretion to impose a prison sentence within the statutory range[.]" Id. at ¶ 100. Post-Foster, we review felony sentences under an abuse of discretion standard. State v. Windham, 9th Dist. No. 05CA0033, 2006-Ohio-1544, at ¶ 12. Under this standard, we must determine whether the trial court's decision was arbitrary, unreasonable, or unconscionable-not merely an error of law or judgment. See State v. Adams (1980), 62 Ohio St.2d 151,157. *Page 9 
 {¶ 18} R.C. 2929.11(A) provides that a trial court must be guided by the principles of felony sentencing: protection of the public and punishment of the offender. "A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * * commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).
 {¶ 19} Having reviewed the record, we cannot conclude that the trial court's decision to sentence Defendant to a one-year prison term is arbitrary, unreasonable, or unconscionable. The record reflects that that at the time of the offense, Defendant was incarcerated in a state correctional facility. The trial court's judgment indicates that the court considered "all matters set forth by law." Furthermore, it was not an abuse of discretion for the trial court to consider, based on its observation of the testimony and demeanor of Defendant, that he lied under oath. "When a sentencing judge is the same judge who presided over the defendant's trial, the fact that the defendant knowingly gave false testimony while under oath is a factor that may be considered along with other pertinent factors when imposing sentence." State v. O'Dell (1989),45 Ohio St.3d 140, paragraph one of the syllabus, citing United States.v. Grayson (1978), 438 U.S. 41. See, also, State v. Staples, 12th Dist. No. CA2006-10-259, 2007-Ohio-7072 (applying O'Dell
post-Foster). Finally, the one-year prison term is the maximum permitted *Page 10 
for felonies of the fifth degree, and is therefore within the statutory range of permissible sentences. See R.C. 2929.14(A)(5). Under these circumstances, we cannot conclude that the trial court abused its discretion in imposing sentence upon Defendant, and his second assignment of error is overruled.
 {¶ 20} Defendant's assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 11 
Costs taxed to Appellant.
MOORE, J., CONCURS.
[1] In its brief, the State concedes that "[Defendant's] sentence is void because the trial court failed to notify [Defendant] regarding his post release control obligations at the time of sentencing." This Court's review, however, is limited to errors assigned by the appellant. See App.R. 12(A)(1)(b).