DECISION AND JOURNAL ENTRY.
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant, Anthony Myers, appeals his conviction and sentence in the Summit County Court of Common Pleas. We affirm.
 {¶ 2} On August 13, 2006, Jennifer Prentice awoke to find a stranger crouched at the side of her bed. She woke up her husband, Shaun, who pursued the intruder downstairs to the first floor of their duplex. During the scuffle that followed, several chairs were knocked over and Mr. Prentice placed the intruder in a headlock. He recognized the intruder as a man with whom he had exchanged words a week earlier. On August 20, 2006, a friend of the Prentices noticed the same man patronizing the Harbor Inn, a bar located near the Prentices' home. The *Page 2 
Prentices went to the bar where their friend, Dave Willis, confronted Defendant. Words were exchanged between the two as Mr. and Mrs. Prentice called the police.
 {¶ 3} Defendant fled on foot when deputy sheriffs arrived and was apprehended when found hiding in a clump of bushes. The Prentices identified him at the scene, and Defendant ultimately admitted that he had been in their house. Defendant was charged with aggravated burglary in violation of R.C. 2911.11(A)(1), a felony of the first degree, and burglary in violation of R.C. 2911.12(A)(1), a felony of the second degree. A jury found Defendant guilty of both counts, and the trial court sentenced him to concurrent five-year prison terms. Defendant timely appealed, raising seven assignments of error.
 ASSIGNMENT OF ERROR I "The Defendant's conviction was against the manifest weight of the evidence."
 ASSIGNMENT OF ERROR II "The [trial] court improperly denied the motion to dismiss at the end of the State's and the Defense's case."
 {¶ 4} In his first and second assignments of error, Defendant has argued that his conviction for aggravated burglary was against the manifest weight of the evidence and was not supported by sufficient evidence.
 {¶ 5} When reviewing a trial court's denial of a Crim.R. 29 motion, this Court assesses the sufficiency of the evidence "to determine whether such *Page 3 
evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. In making this determination, we must view the evidence in the light most favorable to the prosecution. Id.; State v. Feliciano (1996), 115 Ohio App.3d 646,653. "In essence, sufficiency is a test of adequacy." State v.Thompkins, 78 Ohio St.3d 380, 386.
 {¶ 6} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. Because sufficient evidence is required to take a case to the jury, the conclusion that a conviction is supported by the weight of the evidence necessarily includes a *Page 4 
finding of sufficiency. State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 7} R.C. 2911.11(A)(1), which prohibits the crime of aggravated burglary, provides that "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another[.]" When a person trespasses in an occupied residence by means of force, stealth, or deception, the intent to commit a criminal offense can be inferred. State v. Smith, 8th Dist. No. 84292, 2004-Ohio-6111, at ¶ 19, citingState v. Flowers (1984), 16 Ohio App.3d 313. See, generally, State v.Huffman (1936), 131 Ohio St. 27, paragraph four of the syllabus (explaining that intent "must be gathered from the surrounding facts and circumstances under proper instructions from the court.")
 {¶ 8} As Shaun Prentice testified, August 13, 2006, was the second occasion on which he encountered Defendant. According to his testimony and that of Mrs. Prentice and witnesses Kristen Langford and David Willis, the first instance occurred one week earlier on the evening of August 5, 2006. On that night, Mr. and Mrs. Prentice visited the Harbor Inn with Kristen Langford and her boyfriend. When Ms. Langford had a disagreement with her boyfriend, Mr. Prentice agreed to walk her back to the Prentices' residence. Mrs. Prentice stayed *Page 5 
behind at the Harbor Inn to search for her husband's missing cell phone. Mr. Prentice and Ms. Langford were soon joined by an unfamiliar male who, according to Ms. Langford, began "hitting on" her. Mr. Prentice did not recall the individual's comments to Ms. Langford, but testified that the man made statements to him that he characterized as "running his mouth" and "threatening." Mr. Willis, who gave Mrs. Prentice a ride home shortly after Mr. Prentice left the bar, testified that he pulled alongside the walkers in his Jeep. He confirmed Mr. Prentice's and Ms. Langford's versions of the events. Mr. Prentice recalled that the stranger continued to walk with them until they reached their destination then continued walking after they went inside the house.
 {¶ 9} Mr. Prentice testified that on August 13, 2006, he and his wife returned from another evening at the Harbor Inn. Several friends joined them at their home for card games, but the Prentices went to bed before their guests left for the night. Mrs. Prentice recalled that she heard the last guest leave before she fell asleep. According to Mr. Prentice, he and his wife were awakened shortly after 4:00 a.m. by "pounding on our door, ringing our doorbell nonstop." Mrs. Prentice, who responded first, went outside onto a second-floor balcony to find a man standing below. Mrs. Prentice testified that she asked the man to stop and told him that their baby was sleeping. She recalled that the stranger replied, "It's Anthony. I'm here looking for Jason." Mr. Prentice testified that when the noise continued, he confronted the stranger. He recalled that from the balcony, he was *Page 6 
approximately ten feet above the man. According to his testimony, the available light was "not substantial, but pretty good," and he recognized the stranger as the man with whom he had exchanged words on the evening of August 5th.
 {¶ 10} Mrs. Prentice testified that she was awakened sometime after this incident by the sensation that someone was rubbing her hand:
 "I was laying in bed sleeping and I felt somebody rubbing my hand. And I — my first thought was that it was my husband. But then I realized it was coming from the wrong side of the bed. So I woke up and I looked, there was somebody crouched down beside me, holding my hand. And I asked, `Who are you?'
 "And he said, `It's Anthony.'
 "I said again, `Who are you?'
 "And he said, `It's Anthony.' And at that point I started hitting my husband to wake him up and yelling that there was somebody in the house."
Mr. Prentice testified that he chased the stranger from the bedroom and downstairs to the living area of the house, where the two had a physical "struggle." According to Mr. Prentice, he placed Defendant in a headlock and the struggle continued with Defendant "struggling back," "trying to hit," and "fighting against" him. The stranger fled on foot, and deputies from the Summit County Sheriffs Office arrived shortly thereafter. Mr. Prentice stated that he recognized the stranger as the man he had seen from the balcony earlier that morning and with whom he had exchanged words a week before. *Page 7 
 {¶ 11} Mr. and Mrs. Prentice described what they found in their home on further examination. Although they did not allow smoking in the house, the couple found cigarette butts in the bathroom sink. The kitchen stove was strewn with ashes. A candle burned unattended in the bathroom near their daughter's bedroom. Mrs. Prentice noted that the intruder had tampered with their heating and cooling system: "[I]t was in the middle of summer, we had the air conditioning on, but noticed for some reason the heat was on. It was turned all the way up."
 {¶ 12} One week later, the Prentices saw Defendant at the Harbor Inn and recognized him as the man who had entered their home on the evening of August 13th. Responding law enforcement officers testified that although Defendant initially denied involvement, he later admitted that he had been in the Prentices' home on the night in question.
 {¶ 13} Defendant challenges his conviction for aggravated burglary on two points: (1) that there was no evidence that he entered the Prentice's home with the intent to commit the offense of menacing, in violation of R.C. 2903.22, as the State maintained; and (2) that the evidence did not establish that he inflicted, attempted, or threatened to inflict physical harm on anyone while in the home.
 {¶ 14} The offense of menacing is committed when an individual "knowingly cause[s] another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a *Page 8 
member of the other person's immediate family." R.C. 2903.22. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Menacing can be implied by the offender's actions without a verbal threat, and under ordinary circumstances "[t]he key is whether the victim genuinely believes that he or she is facing physical harm to person or property."Niles v. Holloway (Oct. 3, 1997), 11th Dist. No. 96-T-5533, at *2.
 {¶ 15} R.C. 2903.22 and R.C. 2911.11(A)(1) interact in a way that requires subjective inquiry into the state of mind of victim and perpetrator, both of which rely on inferences drawn from circumstantial evidence. In other words, the question presented by Defendant's first and second assignments of error is whether the evidence demonstrated that he entered the Prentices' home with the intention of causing them to believe that they faced physical harm to person or property. The jury could reasonably have inferred from Defendant's course of conduct prior to entering the Prentices' home and the actions that he took once inside that he intended to cause the Prentices to fear for their safety. Consequently, our review of the evidence leads us to conclude that the State met its burden of persuasion on this point. *Page 9 
 {¶ 16} Defendant also argues that the weight of the evidence warrants a new trial because the State did not demonstrate that he attempted, caused, or threatened to cause physical harm to the Prentices or to their property while inside the house. Specifically, Defendant maintains that Mr. Prentice's testimony that Defendant "struggled" with him does not indicate that Defendant inflicted physical harm. "`Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). This definition does not require any outward manifestation of physical injury. State v. Collier, 9th Dist. No. 07CA009115, 2008-Ohio-826, at ¶ 14. We also note that R.C. 2911.11(A)(1) includes attempts and threats to inflict physical harm as well, so that actual harm is not required in every case.
 {¶ 17} Mr. Prentice testified that he chased Defendant from the bedroom to the first floor of the house, where the two had a physical confrontation. Mr. Prentice described the struggle that ensued:
 "Q: * * * And how did the confrontation occur?
 "A: "I chased him down, I ran down the steps and got in a struggle with him.
 * * *
 "Q: Did you at any time grab him, put him in a headlock?
 "A: Yes.
 "Q: And so at that time his back was to you?
 "A: No. *Page 10 
 "Q: He was facing you? He was facing you when you had him in a headlock?
 "A: There are several different positions we were in.
 * * *
 "Q: What was he doing? Was he trying to get up?
 "A: He was struggling back."
In light of Mr. Prentice's testimony regarding his struggle with Defendant, we cannot say that the jury clearly lost its way in determining that Defendant inflicted or attempted to inflict physical harm upon Mr. Prentice while in the residence.
 {¶ 18} Defendant's conviction for aggravated burglary was not against the manifest weight of the evidence. Consequently, this Court also concludes that his conviction is supported by sufficient evidence. SeeRoberts at *2. Defendant's first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III "The Defendant's Due Process, [and] 14th Amendment rights under the U.S. Constitution were violated by the trial court's failure to instruct that [the] jury must reach unanimity instruction [sic] on underlying menacing charge."
 {¶ 19} Defendant argues in his third assignment of error that the trial court committed plain error by failing to instruct the jury that it was required to reach unanimous agreement on the menacing allegation underlying the charge of aggravated burglary. As Defendant concedes, he did not object to the jury instruction at trial, and this Court's review is limited to plain error pursuant to Crim.R. 52. See State v.Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, at ¶ 22-23. *Page 11 
"By its very terms, [Crim.R. 52(B)] places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' defect in the trial proceedings. Third, the error must have affected * * * the outcome of the trial." State v. Barnes (2002),94 Ohio St.3d 21, 27. This court notices plain error only in exceptional circumstances to prevent a manifest miscarriage of justice. SeeState v. Long (1978), 53 Ohio St.2d 91, 97.
 {¶ 20} When a criminal defendant is charged with the same crime under more than one alternative theory of liability, a unanimity instruction is required to guard against "patchwork" verdicts. State v. Johnson
(1989), 46 Ohio St.3d 96, 105. As the Supreme Court of Ohio has explained:
 "We begin with the assumption that, `when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive * * * the verdict stands if the evidence is sufficient with respect to any one of the acts charged.'
 Thus, the prevailing rule is, `a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability.'
 However, if a single count can be divided into two or more `distinct conceptual groupings,' the jury must be instructed specifically that it must unanimously conclude that the defendant committed acts falling within one such grouping in order to reach a guilty verdict." (Internal citations omitted.) Id. at 104. *Page 12 
In this case, however, the Johnson analysis is inapplicable because the State pursued a single theory of liability: that Defendant trespassed in the Prentices' home by force, stealth, or deception, with purpose to commit the criminal offense of menacing. Cf, State v. Griffin, 2d Dist. No. 20681, 2005-Ohio-3698, at ¶ 26 (explaining that, in that case, the State alleged that the aggravated burglary charge was predicated on the purpose to commit the crimes of menacing, assault, criminal damaging, and/or vandalism.). The trial court properly instructed the jury on the elements of aggravated burglary and menacing, and the absence of a unanimity instruction is not plain error. Defendant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "The trial court failed to consider the principles of sentencing, per R.C. 2929.11 and failed to balance the factors of seriousness and recidivism pursuant to R.C. 2929.12."
 {¶ 21} In his fourth assignment of error, Defendant maintains that his concurrent five-year prison terms are contrary to law because the trial court did not consider the principles of felony sentencing set forth in R.C. 2929.11 or the seriousness and recidivism factors set forth in R.C.2929.12. We disagree.
 {¶ 22} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Supreme Court of Ohio concluded that "trial courts have full discretion to impose a prison sentence within the statutory range[.]" Id. at ¶ 100. Post-Foster, we review felony sentences under an abuse of discretion standard. State v. Windham, 9th Dist. No. 05CA0033, 2006-Ohio-1544, at ¶ 12. Under this standard, we must determine *Page 13 
whether the trial court's decision was arbitrary, unreasonable, or unconscionable-not merely an error of law or judgment. See State v.Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 23} R.C. 2929.11(A) provides that a trial court must be guided by the principles of felony sentencing: protection of the public and punishment of the offender. "A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * * commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).
 {¶ 24} Having reviewed the record, we cannot conclude that the trial court's decision to sentence Defendant to concurrent five-year prison terms is arbitrary, unreasonable, or unconscionable. The trial court's judgment indicates that the court "considered the record, oral statements, as well as the principles and purposes of sentencing under O.R.C. 2929.11, and the seriousness and recidivism factors under O.R.C. 2929.12." Although the Prentices did not provide statements at sentencing, the State directed the trial court's attention to their testimony at trial with respect to the impact of Defendant's crimes, and the trial court noted that it considered the evidence presented at trial. Finally, a five-year prison term is well within the statutory range of permissible sentences for felonies of the first and second degree. See R.C. 2929.14(A)(1) and (2). Under these circumstances, we *Page 14 
cannot conclude that the trial court abused its discretion in imposing sentence upon Defendant, and his fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR V "The trial court improperly sentenced [Defendant] to [a] 5 year term, as the Court unconstitutionally found facts by a preponderance of the evidence exposing [Defendant] to an elevated upper term sentence that was above and the statutory maximum for that charges [sic] and unconstitutionally ran them consecutively, thus violating [Defendant's] right to a jury trial."
 {¶ 25} Defendant's fifth assignment of error appears to argue that the trial court sentenced him in violation of Foster by making unconstitutional findings. Defendant also maintains that the trial court abused its discretion by sentencing him to consecutive sentences and sentences beyond the statutory maximum for the offenses. The trial court, however, did not make findings on the record, nor did it sentence Defendant to consecutive sentences. As set forth in this Court's resolution of Defendant's fourth assignment of error, the five-year prison terms are within the statutory range of permissible sentences for felonies of the first and second degree, and the trial court did not abuse its discretion by sentencing Defendant to concurrent five-year prison terms. Defendant's fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR VI "The sentencing of [Defendant], without making the find[ing]s required by R.C. 2929.14(B)(C) and R.C. 2929.14(E), after the severance in Foster operated as an ex post facto law and denied [Defendant] due process." *Page 15 
 {¶ 26} In his sixth assignment of error, Defendant has argued that application of the remedy fashioned by the Supreme Court of Ohio inFoster constitutes an unconstitutional ex post facto law. Defendant did not raise this constitutional objection in the trial court and, therefore, has forfeited the error on appeal. State v. McClanahan, 9th Dist. No. 23380, 2007-Ohio-1821, at ¶ 6. Nonetheless, we observe that this Court has rejected Defendant's argument. Id. at ¶ 6-9. Defendant's sixth assignment of error is overruled.
 ASSIGNMENT OF ERROR VII "[Defendant] received ineffective assistance of counsel and this violated [Defendant's] Sixth Amendment right to Counsel."
 {¶ 27} Defendant's final assignment of error argues that trial counsel's performance was ineffective in that she failed to object to the errors alleged in Defendant's third, fourth, fifth, and sixth assignments of error. We disagree.
 {¶ 28} This court analyzes claims of ineffective assistance of counsel under a standard of objective reasonableness. See Strickland v.Washington (1984), 466 U.S. 668, 688; State v. Bradley (1989),42 Ohio St.3d 136, 142. Under this standard, a defendant must show deficiency in the performance of counsel "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment" and that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" Strickland, 466 U.S. at 687. In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. Trial *Page 16 
strategy "must be accorded deference and cannot be examined through the distorting effect of hindsight." State v. Conway, 109 Ohio St.3d 412,2006-Ohio-2815, at ¶ 115. A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable possibility that the outcome of the trial would have been different.Strickland, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691.
 {¶ 29} Defendant has not demonstrated that prejudice resulted from trial counsel's performance. The errors allegedly made by trial counsel relate to the matters addressed in Defendant's third, fourth, fifth, and sixth assignments of error. With respect to counsel's failure to object to the absence of a unanimity instruction specific to the crime of menacing, we concluded in our disposition of Defendant's third assignment of error that a unanimity instruction was not required because the State did not pursue alternative theories of the offense underlying the aggravated burglary conviction. Similarly, this Court has concluded, supra, that the trial court did not abuse its discretion in sentencing Defendant to concurrent five-year prison terms, and this Court has previously held that the Foster remedy is not unconstitutional. Defendant's seventh assignment of error is overruled.
 {¶ 30} Defendant's assignments of error are overruled, and the judgment of the trial court is affirmed. *Page 17 
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 MOORE, P. J., DICKINSON, J., CONCUR *Page 1