[Cite as *State v. Whitehead*, 2019-Ohio-5141.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28334 |
| | : | |
| v. | : | Trial Court Case No. 2019-CRB-394 |
| | : | |
| SEAN WHITEHEAD | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of December, 2019.

. . . . . . . . . . .

HOPE SMALLS, Atty. Reg. No. 0091610, Assistant City of Dayton Prosecuting Attorney, 335 West Third Street, Room 372, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

FRANK MATTHEW BATZ, Atty. Reg. No. 0093817, 126 North Philadelphia Street, Dayton, Ohio 45403
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-appellant, Sean Whitehead, appeals from his conviction in the Dayton Municipal Court after the trial court found him guilty of menacing, loitering, and two counts of child enticement. In support of his appeal, Whitehead contends that there was insufficient evidence presented at his bench trial to support his conviction. Whitehead also contends that his conviction was against the manifest weight of the evidence. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On January 25, 2019, Whitehead was charged by complaint with one count of aggravated menacing in violation of R.C. 2903.21(A), one count of menacing in violation of R.C. 2903.22(A), one count of loitering in violation of R.C. 2907.241(A)(4), and three counts of child enticement in violation of R.C. 2905.05(A), (B), and (C). The charges stemmed from Whitehead's interactions with 13-year-old K.M. on the afternoon of January 16, 2019.

{¶ 3} After the complaint was filed, Whitehead pled not guilty to the charges and the matter was scheduled for a bench trial. On the day of trial, Whitehead's trial counsel filed a motion to dismiss the child enticement charge under R.C. 2905.05(A) on grounds that the Supreme Court of Ohio had declared that section of the statute unconstitutional in *State v. Romage,* 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156. In response to the motion, the State dismissed that particular charge, but proceeded on all the other charges in the complaint.

{¶ 4} At trial, K.M. testified that on January 16, 2019, she was walking alone to pick up her brother from his elementary school in Dayton, Ohio, when she noticed a male, who

she later identified as Whitehead, slowly drive by her in a small silver car. K.M. testified that Whitehead was looking at her as he drove past. K.M. testified that Whitehead then made a U-turn and drove up next to where she was walking on the sidewalk. K.M. testified that Whitehead had his front-passenger window rolled down and asked her if she would get inside his vehicle so that she could give him directions to Xenia Avenue.

{¶ 5} K.M. testified that she declined to get into Whitehead's vehicle and walked away. However, K.M. testified that when she walked away, Whitehead continued to slowly drive behind her. K.M. testified that she then saw Whitehead pull his car over and make movements as though he was going to exit his car. In response to seeing those movements, K.M. testified that she became scared and started to run to her brother's school. K.M. testified that she began to run because she thought that Whitehead was going to "grab" her. Trial Tr. p. 9.

{¶ 6} When she arrived at her brother's school, K.M. met her cousin at the front of the school building. K.M. testified that she told her cousin "a guy was trying to get [her]." *Id.* at 10. K.M. testified that while she was talking to her cousin, Whitehead drove by the school about 30 to 40 seconds after she had arrived. After seeing Whitehead again, K.M. testified that she went into the school and reported the incident to the school's principal. K.M. testified that she also reported the incident to Anjanette Tevis, a case manager at the school K.M. referred to as "Miss Angie." *Id.*

{¶ 7} Tevis also testified at trial and confirmed that she had encountered K.M. on the afternoon in question. Tevis testified that when she first encountered K.M, K.M. appeared "agitated" and "scared." *Id.* at 21. Tevis also testified that "[i]t looked like something had happen[ed] to upset [K.M.]." *Id.*

{¶ 8} Officer Joe Pence of the Dayton Police Department also testified at trial. Pence testified that he responded to the incident and met with K.M. on the afternoon in question. Pence testified that K.M.'s demeanor was "jacked up" and "excited." Trial Tr. p. 29. Officer Pence also testified that it looked "like [K.M.] had been scared." *Id.*

{¶ 9} Officer Pence further testified that K.M. gave him a description of the car involved in the incident. Upon receiving K.M.'s description, Officer Pence informed other police crews about the car. In continuing his investigation, Pence testified that on the following day, he contacted East End Community Center ("East End"), which has multiple cameras set up in the area. Pence testified that East End provided him with video footage showing K.M. walking to the school and Whitehead's vehicle driving by shortly thereafter.

{¶ 10} The State submitted the East End video footage as State's Exhibit 2. The video footage showed a girl walking briskly on the sidewalk toward the school building while looking over her shoulder. The video footage also showed a small silver car driving by the school approximately 30 seconds later. As it drove by, the car began to make a slight right turn in K.M.'s direction toward the entrance to the school's parking lot. However, instead of making the turn, the car changed course and continued to drive down the road it was traveling on and eventually drove out of the camera's view.

{¶ 11} Officer John Beall of the Dayton Police Department also testified at trial. Officer Beall testified that on January 23, 2019, he encountered the silver car that was involved in the incident with K.M. Officer Beall testified that he pulled the car over based on it having no front license plate and based on the child enticement incident in question. Beall testified that he approached the car, made contact with the driver, and identified the

driver as Whitehead. Beall also testified that he had Whitehead exit his car so that he could handcuff Whitehead and place him in the backseat of his cruisier. Beall thereafter conducted an inventory search of Whitehead's car, which yielded a large knife with a 7" blade under the front seat.

{¶ 12} In addition, Officer Beall testified that 30 minutes to an hour after his first contact with Whitehead, Whitehead spontaneously said he was "not a child molester or rapist." Trial Tr. p. 43. Beall testified that Whitehead made this statement before Beall had the opportunity to inform Whitehead about the child enticement investigation. Shortly thereafter, Beall arrested Whitehead and booked him into jail.

{¶ 13} Dayton Police Detective Hollie Bruss also testified at trial. Bruss testified that she interviewed Whitehead the day after his arrest. Bruss testified that Whitehead told her that he worked at Burger King on Xenia Avenue and that he was not affiliated with the police, schools, or any emergency medical service.

{¶ 14} Detective Bruss also testified that when she asked Whitehead what happened on January 16, 2019, Whitehead gave her a lot of different, convoluted stories. For example, Bruss testified that Whitehead told her that he was driving around looking for a prostitute because he and his girlfriend had gotten into a fight. Whitehead also told Bruss that he had stopped and talked to a person on the street who he thought was a prostitute walking with a child. Whitehead told Bruss that the prostitute got into his car, but not the child.

{¶ 15} According to Bruss, Whitehead said that he pulled up next to the person he thought was a prostitute, rolled down his window, and talked to her. Whitehead told Bruss that after the prostitute got into his car, he dropped her off somewhere. However,

Whitehead also told Bruss that nothing happened with the prostitute and that he never asked the prostitute to get into his car.

{¶ 16} When asked about the large knife found in his car, Whitehead told Bruss that he kept it there for protection. Whitehead told Bruss that he kept the knife as protection because he sleeps in his car and someone had previously threatened him. Bruss testified that she did not recall whether Whitehead said the knife was in his car on January 16, 2019.

{¶ 17} Based on the testimony and evidence presented at trial, the trial court found Whitehead guilty of menacing, loitering, and both counts of child enticement under R.C. 2905.05(B) and R.C. 2905.05(C). The trial court, however, found that Whitehead was not guilty of aggravated menacing. Following the trial court's verdict, the trial court held a sentencing hearing on February 20, 2019. At the sentencing hearing, the trial court sentenced Whitehead to serve an aggregate term of 180 days in jail with 26 days of jail-time credit. The trial court also ordered Whitehead to pay a $25 fine plus court costs, and designated Whitehead a Tier I Sex Offender/Child Victim Offender.

{¶ 18} Whitehead now appeals from his conviction, raising two assignments of error for review.

**First and Second Assignments of Error**

{¶ 19} Under his first and second assignments of error, Whitehead contends that his conviction for menacing, loitering, and child enticement was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

*Sufficiency and Manifest Weight Standards of Review*

{¶ 20} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

{¶ 21} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013 CA 61,

2013 CA 62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14.

{¶ 22} "Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses." *State v. Moore*, 2d Dist. Montgomery No. 26304, 2016-Ohio-5267, ¶ 8, citing *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). "However, we may determine which of several competing inferences suggested by the evidence should be preferred." *Id.* "A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances." *Id.*, citing *Martin* at 175.

*Menacing*

{¶ 23} As noted above, Whitehead contends that his conviction for menacing under R.C. 2903.22(A) was not supported by sufficient evidence and was against the manifest weight of the evidence. Pursuant to R.C. 2903.22(A), the offense of menacing is committed when the offender "knowingly cause[s] another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B).

{¶ 24} "Menacing can be implied by the offender's actions without a verbal threat, and under ordinary circumstances '[t]he key is whether the victim genuinely believes that he or she is facing physical harm to person or property.' " *State v. Myers*, 9th Dist. Summit No. 23853, 2008-Ohio-1913, ¶ 14, quoting *Niles v. Holloway*, 11th Dist. Trumbull

No. 96-T-5533, 1997 WL 665974, *2 (Oct. 3, 1997). However, for menacing to be proven, "a victim need not articulate a precise fear." *State v. Howard*, 2d Dist. Montgomery No. 23588, 2010-Ohio-5158, ¶ 14. Rather, "[i]t is sufficient for the State to establish the victim's general fear for the safety of [herself], the members of [her] immediate family, and/or [her] property." *Id.* For example, in *Howard*, this court found sufficient evidence of fear of physical harm for purposes of establishing menacing where the victims did not articulate any specific fears, but merely repeated that they feared for their safety because they did not know what the defendant might do. *Id.* at ¶ 14-15.

{¶ 25} In this case, K.M. testified that she was "scared" by Whitehead's conduct on the afternoon in question. Trial Tr. p. 10 and 17. Specifically, K.M. testified: "I thought he was going to come grab me, so I started running. I started running * * * so he couldn't grab me at all. So, I was freaking out kind of." *Id.* at 9. K.M. also testified that she ran away "because [she] was scared and [she] was nervous." *Id.* at 17. K.M. explained that she was scared because she "didn't know [Whitehead]" and she "[didn't] know what he would have done" if he had caught her. *Id.* at 17-18. Tevis also confirmed that K.M. entered the school looking "agitated" and "scared," noting that "it looked like something happen[ed] to upset her." *Id.* at 21. Officer Pence further confirmed that K.M.'s demeanor was "jacked up" and "excited" as if "she had been scared." *Id.* at 29.

{¶ 26} Although the aforementioned testimony may not relay a precise fear of physical harm, it nevertheless establishes that Whitehead's conduct caused K.M. to fear for her personal safety, as K.M. clearly indicated that she was scared Whitehead was going to grab her. According to *Howard*, generally fearing for one's personal safety is sufficient to prove the fear-of-physical-harm element of menacing. *Howard* at ¶ 14-15.

Accordingly, we find that the fear-of-physical-harm element was sufficiently established by the State at trial.

{¶ 27} With regard to the element that requires Whitehead to have "knowingly" caused K.M.'s fear of physical harm, Detective Bruss testified that, during her interview with Whitehead, Whitehead said that he "slowly drove behind somebody" and "possibly scared somebody." Trial Tr. p. 55. Whitehead also told Bruss that he "probably scared" the person that he talked to on the street "because he scares a lot of people." *Id.* Whitehead further told Bruss that "he looks scary" and that "[h]e knows he looks like a rapist." *Id.* at 56.

{¶ 28} In addition to these statements, the fact that K.M. testified to running away from Whitehead when he started to slowly drive behind her, combined with the video evidence showing that Whitehead continued to follow K.M. to the school, would permit a rational trier of fact to conclude that Whitehead knew his conduct was causing K.M. to fear for her safety. Whitehead would have been aware of such circumstances as soon as K.M. started to run away. Therefore, the "knowingly" element was also sufficiently established at trial.

{¶ 29} For the foregoing reasons, and when considering the aforementioned testimony and evidence in a light most favorable to the State, we find that sufficient evidence was presented to convict Whitehead for menacing. Furthermore, after reviewing the entire record, weighing the evidence and all reasonable inferences, we do not find that the trial court clearly lost its way and created a manifest miscarriage of justice that warrants the reversal of Whitehead's conviction for menacing. Therefore, we find that Whitehead's conviction for menacing was also not against the manifest weight of the

evidence.

*Loitering*

**{¶ 30}** Whitehead also contends that his conviction for loitering under R.C. 2907.241(A)(4) was not supported by sufficient evidence and was against the manifest weight of the evidence.   Pursuant to R.C. 2907.241(A)(4):

(A) No person, with purpose to solicit another to engage in sexual activity for hire and while in or near a public place, shall do any of the following:

* * *

(4) If the offender is the operator of or a passenger in a vehicle, stop, attempt to stop, beckon to, attempt to beckon to, or entice another to approach or enter the vehicle of which the offender is the operator or in which the offender is the passenger[.]

**{¶ 31}** A person acts "purposefully" when "it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature."   R.C. 2901.22(A). Purpose or intent may be proven by circumstantial evidence, and thus established from reasonable inferences drawn from other proven facts and circumstances in the case. *State v. Smith*, 2d Dist. Clark No. 3013, 1994 WL 43105, *2 (Jan. 7, 1994), citing *State v. Johnson*, 56 Ohio St.2d 35, 381 N.E.2d 637 (1978).   " 'A conviction based on purely circumstantial evidence is no less sound than a conviction based on direct evidence.' " *State v. Pounds*, 2d Dist. Montgomery No. 22469, 2008-Ohio-5384, ¶ 38, quoting *State*

*v. Howland*, 12th Dist. Fayette No. 2006-08-035, 2008-Ohio-521, ¶ 32. As long as the evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt, circumstantial evidence is sufficient to sustain a conviction. *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 75.

{¶ 32} In this case, the State presented testimony from which the trier of fact could have found all elements of loitering to engage in solicitation proven beyond a reasonable doubt. Detective Bruss testified that at one point during her interview with Whitehead, Whitehead admitted to pulling his vehicle up to a person walking on the street who he thought was a prostitute and talking with her. Bruss also testified that Whitehead told her that he was looking for a prostitute because he and his girlfriend had gotten into a fight. Although Whitehead told Bruss that he was not "going to do anything" with the prostitute, the trier of fact could have found otherwise given that, in the wake of a fight with his girlfriend, Whitehead was admittedly seeking out a prostitute, i.e., "someone who engages in sexual acts in exchange for money or anything else of value." *Black's Law Dictionary* (11th Ed.2019), prostitute.

{¶ 33} Although Detective Buss testified that Whitehead denied ever asking the person he spoke with to get into his car, K.M. testified that she was by herself when Whitehead stopped his car, approached her, and asked her to get inside his vehicle. The fact that there is no evidence of a specific solicitation by Whitehead or consummation of a sexual act is irrelevant because "[l]oitering to engage in solicitation does not require solicitation or consummation." *State v. Gross*, 2d Dist. Montgomery No. 27322, 2017-Ohio-8493, ¶ 12. Rather, there simply must have been evidence that Whitehead's intent in stopping his vehicle to talk with K.M. was to solicit her to engage in sexual activity for

hire. We find that when viewed in a light most favorable to the State, Whitehead's statements to Detective Bruss amount to sufficient evidence of such intent.

{¶ 34} Based on the testimony presented at trial, we find that a rational factfinder could have concluded that Whitehead, the operator of a vehicle, was looking to engage in sexual activity with a prostitute when he stopped his vehicle in a public place and asked K.M. to get into his vehicle. Therefore, we find that the State presented sufficient evidence of loitering to engage in solicitation. Also, after examining the record and weighing the evidence and reasonable inferences, we do not find that Whitehead's conviction for loitering to engage in solicitation was against the manifest weight of the evidence.

*Child Enticement*

{¶ 35} Whitehead further contends that his conviction for two counts of child enticement under R.C. 2905.05(B) and R.C. 2905.05(C) was not supported by sufficient evidence and was against the manifest weight of the evidence. Pursuant to R.C. 2905.05(B): "No person, *with sexual motivation*, shall violate division (A) of [R.C. 2905.05]." (Emphasis added.) Pursuant to R.C. 2905.05(C): "No person, *for any unlawful purpose*, other than or in addition to, that proscribed by division (A) of [R.C. 2905.05] shall engage in any activity described in division (A) of [R.C. 2905.05]." (Emphasis added.)

{¶ 36} R.C. 2905.05(A) provides the following:

No person, by any means and without privilege to do so, shall knowingly solicit, coax, entice, or lure any child under fourteen years of age to

accompany the person in any manner, including entering into any vehicle or onto any vessel, whether or not the offender knows the age of the child, if both of the following apply:

(1) The actor does not have the express or implied permission of the parent, guardian, or other legal custodian of the child in undertaking the activity.

(2) The actor is not a law enforcement officer, medic, firefighter, or other person who regularly provides emergency services, and is not an employee or agent of, or a volunteer acting under the direction of, any board of education, or the actor is any of such persons, but, at the time the actor undertakes the activity, the actor is not acting within the scope of the actor's lawful duties in that capacity.

{¶ 37} The Supreme Court of Ohio has declared R.C. 2905.05(A) unconstitutional on grounds that it prohibits a significant amount of constitutionally-protected activity and is therefore overbroad. *Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156, at ¶ 18-19. Divisions (B) and (C) of the statute, however, do not suffer from the same infirmity as division (A) because those divisions include additional elements. *See generally, State v. Wright*, 5th Dist. Stark No. 2016 CA 00028, 2016-Ohio-5894, ¶ 22. For example, unlike division (A) of the statute, division (B) requires the State to prove that the accused acted "with sexual motivation" and division (C) requires the State to prove that the accused acted "for any unlawful purpose other than or in addition to that proscribed by division (A)."

{¶ 38} Although Whitehead mentions the unconstitutionality of R.C. 2905.05(A) in his appellate brief, it is not the basis on which he is appealing his child enticement

conviction, as Whitehead was convicted of violating R.C. 2905.05(B) and (C), not (A). Whitehead instead challenges his conviction for child enticement simply on grounds that the State failed to prove that he acted with sexual motivation or an unlawful purpose when interacting with K.M.

{¶ 39} A review of the record, however, establishes that a rational factfinder could have concluded that sexual motivation was established by the testimony presented at trial. As previously discussed, Detective Bruss testified that Whitehead told her that, on the afternoon in question, he was looking for a prostitute because he was mad at his girlfriend. Whitehead also told Detective Bruss that he thought the person he stopped on the street was a prostitute. Given that prostitutes provide sexual services, it would be reasonable for a factfinder to conclude that Whitehead's motivation was sexual in nature when he stopped K.M. and asked her to get inside his vehicle. This conclusion is supported by Officer Pence's testimony stating that K.M. had reported that Whitehead was watching her in a "creepy" manner "like he was checking her out." Trial Tr. p. 33. In addition, Officer Beall, the officer who pulled Whitehead over, testified that, before he ever had an opportunity to advise Whitehead of the child enticement investigation, Whitehead spontaneously said that "he is not a child molester or rapist." *Id.* at 43.

{¶ 40} Taking all the testimony together, and when viewing it in a light most favorable to the State, we find that the State presented sufficient evidence of sexual motivation and that such a finding was not against the manifest weight of the evidence. We reach the same conclusion with regard to the "unlawful purpose" element of R.C. 2905.05(C). This is because we already concluded, for purposes of the loitering charge, that sufficient evidence was presented to find that Whitehead approached K.M. in a public

place and asked her to get inside his vehicle with the unlawful purpose to solicit sexual activity for hire.

{¶ 41} For all the foregoing reasons, Whitehead's conviction for menacing under R.C. 2903.22(A), loitering under R.C. 2907.241(A)(4), and child enticement under R.C. 2905.05(B) and (C) was supported by sufficient evidence and was not against the manifest weight of the evidence. Therefore, Whitehead's first and second assignments of error are overruled.

## Conclusion

{¶ 42} Having overruled both assignments of error raised by Whitehead, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies sent to:

Hope Smalls
Frank Matthew Batz
Hon. Christopher D. Roberts