[Cite as *State v. Harvey*, 2023-Ohio-4454.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo                         Court of Appeals No.  L-23-1031

        Appellee                                    Trial Court No.  CRB-22-11020

v.

Melissa Harvey                                       **DECISION AND JUDGMENT**

        Appellant                                   Decided:  December 8, 2023

* * * * *

Rebecca Facey, City of Toledo Prosecuting Attorney, and
Jimmy Jones, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, Melissa Harvey, appeals the February 8, 2023 judgment of the
Toledo Municipal Court sentencing her for a misdemeanor conviction of menacing.  For
the following reasons, we affirm.

## I. Background and Facts

{¶ 2} In November 2022, Harvey was charged by complaint with one count of menacing in violation of R.C. 2903.22(A)(1)[1], a fourth-degree misdemeanor, following an altercation at a school basketball game with J.L., her soon-to-be-ex-husband's girlfriend. The complaint alleged that Harvey knowingly caused J.L. to believe that Harvey "would cause her physical harm when she lunged at and tried to punch [J.L.]."

{¶ 3} Harvey's case was tried to the court on February 8, 2023. Appellee, the city of Toledo, presented the testimony of Ronny Harvey, Harvey's estranged husband, and J.L. Harvey testified in her own behalf. The following facts were elicited at trial.

{¶ 4} Ronny, J.L., Harvey, and N.H., Harvey and Ronny's younger son, attended a school basketball game in which Harvey and Ronny's older son was playing. J.L. and Ronny arrived first and sat at the top of the bleachers at the end of the gym opposite the entry door. There was a wall to their backs and a railing to J.L.'s side. When Harvey and N.H. arrived, N.H. went to sit with Ronny and J.L., and Harvey sat at the end of the gym near the entry door—on the opposite side of the gym from J.L., Ronny, and N.H.

{¶ 5} According to J.L., not long after N.H. arrived, he got upset about something, and Harvey came over to him to see what was wrong. The interaction started with

---

[1] In April 2023, after Harvey's conviction, R.C. 2903.22(A) was rewritten to include a second type of menacing offense. 2022 Am.Sub.S.B. No. 16. Former section (A) is identical to the current version's section (A)(1). *Id.* For clarity, we use R.C. 2903.22(A)(1) to refer to the offense of which Harvey was convicted.

2.

Harvey talking to Ronny about discipline. Harvey's sister, Julie, came up to the group at some point. J.L. said that she was "trying to stay out of it and watch the game[,]" but Harvey soon transitioned to making comments about J.L. and Ronny dating, which J.L. said was "constant whenever [Harvey is] anywhere near * * *" J.L. J.L., who was "just sick of hearing it[,]" told Harvey to "shut the fuck up." After that, Harvey started "cussing at" J.L. and calling her "a whore and a bitch." Harvey walked away, but came back and started swearing at J.L. again. She also "[g]ot really close in [J.L.'s] face." At that point, Julie "stepped up and kind of was holding [Harvey's] arms." Despite that, Harvey "got in" J.L.'s face and "tried to take a swing at" her. Harvey did not make contact because Julie was holding her arms, but J.L. said that Harvey was very close to her. This was the first time that Harvey had "tried to physically, in person, come at [J.L.] like that." After Harvey attempted to "swing at" J.L., Ronny left the stands to find a police officer. N.H. ran off crying while Harvey was yelling at J.L.

{¶ 6} J.L. recorded a video of the altercation on her cellphone, beginning after Julie joined the group. She had her phone in her lap, so the video is at an angle that shows only portions of the participants' bodies. The video started with Harvey talking to Ronny, who got upset when Harvey made a comment about his disciplinary methods. After a few seconds of heated exchange between them, Harvey pointed to J.L. and said, "And you date this?" At this point, Ronny told Harvey to leave, and J.L. responded to Harvey with comments that are largely unintelligible over Harvey's and Ronny's voices,

3.

but included calling Harvey a "child." When J.L. told Harvey to "shut the fuck up," Harvey turned her attention to J.L.

{¶ 7} As the women argued for a few seconds, Harvey called J.L. a "bitch." After that, Harvey tried to get N.H. to leave with her. He refused, and Harvey tried to persuade him while continuing to argue with Ronny, but she eventually turned back to J.L. in response to something J.L. said (that is unclear on the video). The women exchanged insults, calling each other "bitch" and "whore," among other things. Harvey got closer to J.L. throughout the exchange and briefly placed her left hand on Ronny's knee. When Harvey pointed a finger in J.L.'s face, Julie wrapped her hands around Harvey's elbows to hold Harvey back a bit.

{¶ 8} As the women continued to fight, Ronny told Harvey to control herself. At this point, Harvey moved toward J.L. while calling her a "fucking bitch." J.L. and Ronny described this movement as a "lunge," while Harvey described it as a "lean." When Harvey moved toward J.L., her right arm, which was only partially in the frame, swung toward J.L. Julie was pulling back on Harvey's elbows when she moved forward and swung her arm, so she did not come into physical contact with J.L. Immediately after Harvey moved toward her, J.L. chuckled and said, "Nice shallow stab." Julie released Harvey after that, and Harvey turned away, despite continuing to make comments to J.L.

{¶ 9} In response to Ronny threatening to call the police over if Harvey did not leave, Harvey said that J.L. "started it" and that Ronny needed to "shut her up." This

4.

prompted Ronny to get up from his seat to get the police. Harvey and Julie walked away immediately after Ronny left. For the rest of the video, after Harvey and Julie walked away, J.L. made several comments about Harvey, including saying that Harvey "started it, like always" and calling Harvey a "child."

{¶ 10} When the prosecutor asked if J.L. thought that Harvey was going to harm her that day, she said "No doubt." The incident made J.L. "uncomfortable and fearful that [Harvey] won't stop. Because she constantly is doing stuff like this."

{¶ 11} On cross-examination, J.L. admitted that she laughed after Harvey swung at her—when she claimed to be afraid of Harvey—but said that it was an "uncomfortable laugh." She later clarified that it was not because she found the situation "amusing," but that it was "a natural reaction * * *" and a "here we go again kind of laugh." Despite her comments at the end of the video, J.L. said that she was "afraid of [Harvey] because she's constantly doing things like this * * * in regular places. And I was very uncomfortable at that time. And my adrenaline was running."

{¶ 12} Harvey's counsel also asked J.L. about an apparent discrepancy between her testimony and the police report about the incident, which recorded J.L. as saying that Harvey "may have taken a swing as [sic] her but [J.L.] was unsure as it happened so fast." J.L. said that was "[n]ot exactly" what she told the officers; she thought that the police "wrote the information down * * * [i]ncorrectly."

5.

{¶ 13} Ronny's version of events largely mirrored J.L.'s. According to him, Harvey "tried to take a swing at" J.L., but was unsuccessful because Julie was restraining her. Although Julie was holding Harvey's arms, Ronny said that "you could see [Harvey] throw—trying to throw. Like trying to break the restraint." At the time, Harvey was "[v]ery close" to J.L., "[l]ike body parts away; six inches to a foot." He believed that Harvey would have "took a swing at [J.L.] straight" and "threw a full punch at [J.L.]" if Julie had not restrained her arms. Although he said that he did not try to get between the women because Harvey was restrained, he also claimed that he did not know until afterward, when he watched the video J.L. recorded, that Julie was holding Harvey's arms.

{¶ 14} After the city rested, Harvey moved for dismissal under Crim.R. 29. She argued that it was "evident that [J.L.] was not in subjective fear of her safety at that time" because (1) J.L. testified that she was "uncomfortable," but not "afraid;" (2) J.L. laughed "a here we go again type of laugh" on the video; (3) J.L. told the police that Harvey "might have tried to hit [her], but she wasn't sure[;]" (4) Julie was restraining Harvey; (5) Ronny did not have to intervene in the situation; (6) Harvey did not threaten J.L.; (7) Harvey has never punched or "physically harassed" J.L. in the past; and (8) J.L. did not leave or attempt to leave her seat.

{¶ 15} The city responded that "fear" is not a statutory element of menacing. Rather, the city had to show that Harvey knowingly caused J.L. to believe that she was

6.

going to cause J.L. physical harm, and J.L.'s and Ronny's testimony that "but for the restraint a punch would have landed * * * falls perfectly into the statute." The city claimed that J.L.'s "nervous chuckle" did not necessarily mean that J.L. was not in fear. It also pointed out that J.L. testified that she was in the upper corner of the bleachers with a wall at her back and a railing at her side, so getting out of her seat and leaving the situation "would have meant going through [Harvey]."

{¶ 16} The trial court summarily denied Harvey's motion.

{¶ 17} In her testimony, Harvey said that, at some point in the basketball game, she looked over to where J.L., Ronny, and N.H. were sitting and noticed that N.H. was crying. When she saw Ronny stand up and "mouth[] something over to * * *" her, she walked over to the group. After discussing N.H.'s issue with Ronny, they concluded that he was lying, so Harvey told N.H. that "he needed to come and sit with [her]. Because now he was being punished for lying." When she told Ronny as much, he "started yelling" at Harvey, saying that N.H. could stay with him, so Harvey insisted that N.H. come with her. This led to the altercation that J.L. recorded.

{¶ 18} According to Harvey, while she was arguing with Ronny, J.L. "was sitting next to him * * * with her arms crossed, just smiling. Watching the game, but smiling." While Ronny was "yelling back at" Harvey, she turned to J.L. and said, "you're dating this[,]" referring to Ronny. In response, Harvey said that J.L. called her a "fucking bitch[,]" to which Harvey "responded with what [she] said on the video." Harvey moved

7.

closer to J.L. and "just leaned forward a little bit so [J.L.] could hear [her]." To explain her lunging movement on the video, Harvey said, "I leaned forward. And if you see the video, you see me go to put my hand on her knee. And I thought twice about it, and I pulled it back. Because I didn't want to touch her. Because I didn't want her to say that I did touch her." On cross, Harvey reiterated that she did not "lunge" at J.L.; she was only "leaning." She denied shouting and said she got closer to J.L. "[b]ecause I wanted her to hear me." At some point, Julie grabbed Harvey's hands (or possibly her upper arms), but she "broke loose" because she "wasn't done talking to Ronny or [J.L.]." She did not break loose because she was trying to hit someone.

{¶ 19} Harvey flatly denied trying to punch, choke, or hit J.L. at the basketball game, threatening her at the game, or ever threatening or physically hurting her. She also mentioned that the animosity between her and J.L. "has been going for a long time" and that J.L. had "done things to" her.

{¶ 20} Harvey said that the encounter ended with her walking away and leaving the gym to find a police officer. An off-duty officer who was at the game spoke with Harvey. Ronny came out of the gym while Harvey was speaking to the officer, and J.L. came down after that. The officer asked Ronny and J.L. to leave.

{¶ 21} After she testified, Harvey rested. She again moved for dismissal under Crim.R. 29, which the trial court denied.

8.

{¶ 22} Before announcing its verdict, the trial court explained that it had to determine if "a reasonable person [would] believe that [Harvey's] conduct was going to lead to physical harm." It noted that Harvey and Ronny were divorcing, it was not an amicable divorce, and Harvey and J.L.'s relationship was "strained and turbulent." With this as background, the court found that (1) Harvey walked across the gym to get to Ronny and J.L.; (2) she "got in their faces and began an argument" while they were "literally sitting, with their backs to the wall * * *[;]" (3) she stood "inches from them" and got progressively closer as the argument wore on; (4) she was "clenching" her hands in the video while Ronny had his "hands in a defensive posture[;]" (5) she "clearly lunged at" J.L.; (6) J.L. and Ronny each believed that Harvey was going to strike J.L.; and (7) Julie's "reaction [was] to grab [Harvey] and to hold [her] back[,]" which showed that Julie believed that Harvey was going to strike J.L. The court concluded from this evidence that a reasonable, prudent person would believe that Harvey was going to strike J.L. In fact, the judge said that "I don't know anyone that would be sitting there that wouldn't say [J.L.]'s going to get hit. I thought it was about to go down."

{¶ 23} The court found Harvey guilty and sentenced her to 30 days in jail, all suspended, placed her on probation, and ordered that she have no contact with J.L.

{¶ 24} Harvey now appeals, raising two assignments of error:

9.

I. THE TRIAL COURT ERRED TO THE PREJUDICE OF

APPELLANT BY DENYING THE DEFENSE MOTION FOR

ACQUITTAL PURSUANT TO CRIM. R. 29.

II. APPELLANT'S CONVICTION FOR MENACING WAS NOT

SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

## II. Law and Analysis

### A. The trial court properly denied Harvey's Crim.R. 29 motion.

{¶ 25} In Harvey's first assignment of error, she argues that the trial court erred by denying her Crim.R. 29 motion to dismiss because the city failed to show that her actions caused J.L. to believe that she would cause J.L. physical harm. Harvey points to evidence that J.L.'s story changed from the time of the altercation to the time of trial, she laughed after Harvey allegedly tried to punch her, and she never moved from her seat in the bleachers. In response, the city argues that the evidence showed that Harvey went to J.L. and attempted to hit her, but was restrained by Julie; J.L. and Ronny each believed that Harvey was going to harm J.L.; and J.L. specifically testified that she was afraid of Harvey.

{¶ 26} A motion for acquittal under Crim.R. 29(A) challenges the sufficiency of the evidence. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 39. The denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same

10.

standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 27} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

{¶ 28} Harvey was convicted of menacing under R.C. 2903.22(A)(1), which, as relevant here, required the city to prove that Harvey knowingly caused J.L. to believe that she would cause physical harm to J.L. A defendant acts "knowingly" when, regardless of her purpose, she is aware that her conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). "Physical harm" is "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶ 29} To prove the elements of menacing, the prosecution must show that the victim subjectively believed that there was a possibility of physical harm. *State v.*

11.

*McConnaughey*, 1st Dist. Hamilton Nos. C-200273 and C-200274, 2021-Ohio-3320, ¶ 41, citing *State v. Lampela*, 2016-Ohio-8007, 67 N.E.3d 836, ¶ 19 (6th Dist.); and *State v. Cox*, 5th Dist. Stark No. 2015CA00174, 2016-Ohio-3250, ¶ 22. "Menacing can be implied by the offender's actions without a verbal threat, and under ordinary circumstances [t]he key is whether the victim genuinely believes that he or she is facing physical harm to person or property." (Brackets sic and internal quotations omitted.) *State v. Whitehead*, 2d Dist. Montgomery No. 28334, 2019-Ohio-5141, ¶ 24; *State v. Myers*, 9th Dist. Summit No. 23853, 2008-Ohio-1913, ¶ 14. Attempting to hit or punch someone is the type of action that could engender a fear of harm in the person on the receiving end of the conduct. *See Columbus Prosecutors Office v. J.M.*, 2023-Ohio-3555, --- N.E.3d ---, ¶ 38 (10th Dist.) ("Even where punches do not connect, knowingly swinging one's hand at another person in order to hit that person constitutes an attempt to cause physical harm."); *State v. Roesener*, 3d Dist. Union No. 14-21-26, 2022-Ohio-1901, ¶ 9 ("[S]triking another person with a closed fist may result in pain.").

{¶ 30} Here, Harvey's arguments speak to the weight—not the sufficiency—of the evidence. In a sufficiency analysis, we must view all evidence and reasonable inferences in the light most favorable to the prosecution, and determine whether the trier of fact could have found all the elements of the offense proven beyond a reasonable doubt. J.L. testified that Harvey "tried to take a swing at [her] face" and that she had "[n]o doubt" that Harvey wanted to harm her that day. And Ronny said that "[i]f [Harvey] was not

12.

restrained, * * * she would have took a swing at [J.L.] straight." They each clearly testified that they believed Harvey would have hit J.L. but for Julie holding Harvey's arms, which is supported by the video footage. Harvey did this during a heated exchange between the women and while Harvey was blocking J.L. and Ronny from easily leaving their seats. Additionally, the trial court specifically found that Harvey's behavior would cause a reasonable person to believe that she would cause J.L. physical harm, saying that it "d[id]n't know anyone that would be sitting there that wouldn't say [J.L.]'s going to get hit." In reaching this conclusion, the trial court discounted Harvey's version of the story and found J.L.'s and Ronny's versions more believable. Taken together, this evidence is sufficient to support a menacing conviction. Accordingly, Harvey's first assignment of error is not well-taken.

### B. Harvey's conviction is not against the weight of the evidence.

{¶ 31} In her second assignment of error, Harvey argues that the trial court lost its way and created a manifest miscarriage of justice by convicting her because the "animosity between the women was not new[,]" J.L. made comments and called Harvey names on the video, there was "no dispositive proof of a 'swing and a miss'" on the video, J.L. laughed after Harvey allegedly swung at her, and "there was no obvious reason for [J.L.'s] presence [at the basketball game], if not to antagonize [Harvey]." The city responds that the trial court, after hearing the testimony and reviewing the video, found that J.L. "'believed and testified that [Harvey was] going to strike her[,]'" and

13.

"[t]he evidence is clear, [Harvey] menaced the victim J.L. and the Trial Court properly convicted [Harvey]."

{¶ 32} When we review a claim that a verdict is against the manifest weight of the evidence, we weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. We do not view the evidence in a light most favorable to the prosecution. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 387. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172*,* 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 33} Although we consider the credibility of witnesses under a manifest-weight standard, we must, nonetheless, extend special deference to the trial court's credibility determinations, given that it is the trier of fact that has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14. The trial court, as the finder

14.

of fact and the sole judge of the weight of the evidence and the credibility of the witnesses, may believe or disbelieve all, part, or none of a witness's testimony. *State v. Caudill*, 6th Dist. Wood No. WD-07-009, 2008-Ohio-1557, ¶ 62, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶ 34} After carefully reviewing the evidence and the credibility of the witnesses and weighing the testimony, we are not convinced that this is an exceptional case in which the evidence weighs heavily against a conviction. Harvey was the first to escalate the situation by dragging J.L. into her fight with Ronny, Harvey invaded J.L.'s personal space while, as the trial court put it, J.L. and Ronny "[l]iterally [had] their backs to the wall, * * *" and Harvey behaved in a manner that Julie, her sister, found concerning enough to grab her by the arms as a way to hold her back from J.L. Harvey's explanation for her movements on the video—i.e., that she went to put her hand on J.L.'s knee, but changed her mind—is belied by the speed and force with which she moved her hand, particularly when compared to the manner in which she put a hand on Ronny's knee earlier in the video.

{¶ 35} In comparison, the discrepancy between J.L.'s testimony that Harvey definitely took a swing at her and the police report that said Harvey "may have" taken a swing at her (which J.L. explained as the officer incorrectly recording her statement), and J.L. laughing after Harvey swung at her (which she explained was not because she was amused, but because she was "uncomfortable"), do not weigh so heavily against Harvey's

15.

conviction that the trial court lost its way and created a manifest miscarriage of justice by convicting her. Accordingly, we find that Harvey's conviction is not against the manifest weight of the evidence. Thus, her second assignment of error is not well-taken.

### III. Conclusion

{¶ 36} For the foregoing reasons, the February 8, 2023 judgment of the Toledo Municipal Court is affirmed. Harvey is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

Gene A. Zmuda, J.

Charles E. Sulek, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.